## DUBREUIL v. CONFEDERATION LIFE ASSOCIATION.

No. 69-3219.

Circuit Court, Dade County.

December 2, 1970.

Henry M. Cain, Miami, for the plaintiff.

Phillip G. Newcomm of Shutts & Bowen, Miami, for the defendant.

FRANCIS X. KNUCK, Circuit Judge.

This cause came on to be heard on defendant's motion to dismiss and motion to abate. This is a suit for a mandatory injunction requiring payments by the defendant under a Cuban insurance policy to be paid in United States currency.

Plaintiff, Jules Auguste Dubreuil, is a United States citizen who resided in Cuba from 1917 to 1958, when he returned permanently to the United States. Defendant, the Confederation Life Association, Toronto, Canada, a/k/a la Confederación del Canadá, is a Canadian insurance company doing business both in Cuba and Florida. In 1941, plaintiff purchased an insurance policy in the nature of a retirement income bond, from defendant in Cuba. The policy provided, in part —

> "*Place of payment.* — All sums payable or exigible under this bond shall be paid at the principal office of the Association in the City of Havana, Republic of Cuba."

> "*Currency.* — All sums payable or exigible under this bond shall be paid in lawful currency of the United States of America."

Pursuant to the policy, defendant paid plaintiff $25 a month from September 10, 1944 until 1959, when defendant began making payments in Cuban currency in compliance with the Cuban Monetary Control Laws. These laws consisting of Decree No. 1364, which was enacted and put into effect on or about July 1, 1951, Law No. 568, which was enacted and put into effect on or about October 2, 1959, and Law No. 930, which was enacted and became effective on or about February 23, 1961, had the effect of requiring all obligations payable in Cuba to be paid in Cuban pesos.

It is plaintiff's contention that the instant case and the case of Confederation Life Association v. Vega Y. Arminan, Fla. 1968, 211 So.2d 169, which adopted in toto the opinion of the Third District Court of Appeal, 209 So.2d 33, are the same as to all factual circumstances and matters of materiality. That case involved a contract of life insurance, purchased in Cuba, containing a cash surrender provision payable in United States currency. The

basic question was whether to apply Cuban law which required payment in pesos or Florida law which required payment in United States currency. The court stated that the lex loci contractus (law of the place of the contract) is the preferable of the four generally recognized tests —

1. Grouping of contracts or center of gravity test;
2. The intent of the parties test;
3. The place of the contract test; and
4. The place of performance test.

The court further stated that, although the original insurance contract was entered into in Cuba, the cash surrender provision of that contract constituted a continuing, irrevocable offer by the company, which matures into a contractual obligation only upon its being accepted by the insured. The insured accepted the cash surrender offer after he had moved to Florida and because the acceptance was the last act necessary to complete the contract, Florida became the place of the contract.

It is the defendant's contention, in the instant case, that the law of Cuba governs the contract and that under the terms and conditions of the contract as controlled by Cuban law, plaintiff has failed to state a cause of action. Defendant further contends the Act of State Doctrine prohibits the courts of this country from sitting in judgment on the acts of a foreign sovereign. In support of this position, defendant relies primarily on the cases of National Institute of Agrarian Reform v. Kane, Fla. App. 1963, 153 So.2d 40, and Banco Nacional de Cuba v. Sabbatino, 1964, 84 S.Ct. 923, 376 U.S. 398.

This court is of the opinion that there is a vital distinction between the case of Confederation Life Association v. Vega Y. Arminan, supra, and the instant case. The Vega y Arminan case was based on the cash surrender value provision which constituted a continuing, irrevocable offer being accepted in Florida. However, the instant case does not involve a cash surrender provision or any other continuing offer which could be accepted in Florida. The sole dispute concerns interpretation of the original insurance contract which was undeniably entered into in Cuba. Accordingly, Cuba is the place of the contract and its law must be applied. Brown v. Case, 1920, 80 Fla. 703, 86 So. 684, and Castorri v. Milbrand, Fla. App. 1960, 118 So.2d 563.

In applying the law of Cuba, it is this court's opinion that the Act of State Doctrine does apply. Under that doctrine, an inquiry into the validity of the Cuban Monetary Control Laws would clearly transcend the separation of powers and exceed the jurisdiction of this court.

A succinct and often-quoted statement of the Act of State Doctrine was set forth by the United States Supreme Court in Underhill v. Hernández, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897 —

". . . Every Sovereign is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory."

In National Institute of Agrarian Reform v. Kane, Fla. App. 1963, 153 So.2d 40, the court refused to question the validity of the legislative and executive acts of a foreign sovereign and, stated —

". . . to declare invalid an act of expropriation by the Cuban Government of the property of a Cuban corporation in Cuba because such act is discriminatory, arbitrary and confiscatory would be a denial of the sovereignty of a foreign state. To do so would violate the tradition of judicial reluctance to act in areas of executive prerogative. In the words of one author, it would be '*** an unnecessary excursion into an area in which the principles of law are elusive, political repercussions are imminent, and pronouncements of a municipal court have little extraterritorial effect save to offend a foreign sovereign'. 110 U.Pa.L.Rev. 127 (1961)."

Accordingly, it was held the trial court lacked jurisdiction over the subject matter and the complaint was dismissed.

Since the Kane decision, the United States Supreme Court has rendered an opinion of great international significance in the case of Banco Nacional de Cuba v. Sabbatino, 1964, 84 S.Ct. 923, 376 U.S. 398. In delivering the opinion of the court, Mr. Justice Harlan noted that neither international law nor the United States Constitution require the application of the Act of State Doctrine, but it is based on —

". . . the proper distribution of functions between the judicial and political branches of the Government on matters bearing upon foreign affairs."

Likewise, whether the foreign sovereign is recognized by the United States is rrelevant inasmuch as political recognition is a function of the executive branch of the government.

Effective international law must be based on diplomatic maneuvers and reciprocity which, in our government, is the sole function of the executive, and the judiciary must not invade that province. Accordingly, this court does not have jurisdiction over the subject matter and the amended complaint is hereby dismissed.